UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

UNITED STATES OF AMERICA

VS.                                           CASE NO: 2:15-cr-42-FtM-38CM

TAVARES FELTON

_____/

### ORDER[1]

This matter comes before the Court on Defendant Tavares Felton's Motion to Suppress (Doc. #23) filed on August 17, 2015.  The Government filed a Response in Opposition (Doc. #37) on September 10, 2015.  The Court held a hearing regarding this Motion on October 20, 2015.  (Doc. #42).  Defendant Tavares Felton was present at the hearing and represented by Manubir S. Arora and Douglas Molly.  The Government was represented by Assistant United States Attorney Charles D. Schmitz.  The matter is ripe for review.

### Background[2]

On April 6, 2015, the Fort Myers Police Department ("FMPD") received a call from the Cape Coral Hospital regarding a patient who alleged she was kidnapped and beaten by her ex-boyfriend, Defendant Tavares Felton.  The FMPD sent Detective Maalisa Langton, a member of the FMPD Violent Crimes Unit, to investigate the allegations.

---

[1] Disclaimer:  Documents filed in CM/ECF may contain hyperlinks to other documents or websites.  These hyperlinks are provided only for users' convenience.  Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees.  By allowing hyperlinks to other websites, this Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their websites.  Likewise, the Court has no agreements with any of these third parties or their websites.  The Court accepts no responsibility for the availability or functionality of any hyperlink.  Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the Court.

[2] This section is derived from Defendant's Proposed Findings of Fact. (Doc. #23 at 1-2).

When Detective Langton arrived, the patient provided a sworn statement describing how over a period of eight hours, Defendant repeatedly beat her and, at times, held her at gunpoint at his grandmother's residence.  With this sworn statement, Detective Langton secured both an arrest warrant for Defendant and a search warrant for the residence. Both warrants were executed shortly thereafter.

Once Defendant was arrested, Detective Langton and another detective interviewed him about the domestic violence allegations.  Before this interview began, the detectives provided Defendant with a *Miranda* waiver form.  The detectives read the form to Defendant and then watched him sign it.  The interview began around 8 p.m. and lasted approximately 30 minutes.  During this same time period, the first search warrant was executed.  In that search, the FMPD found plain view evidence of drug trafficking, including extensive amounts of heroin.  The FMPD used this information to secure a second search warrant for the residence, focusing on evidence related to drug trafficking. When the second warrant was executed just a few hours later, the FMPD uncovered various drugs and guns which allegedly belonged to Defendant.

With this new drug evidence in hand, the FMPD decided to interview Defendant a second time.  This second interview took place at 2 a.m., just six hours after the initial interview on the domestic violence allegations.  This time, a Drug Enforcement Agency Task Force Agent named Candice Petaccio took the lead.  Agent Petaccio knew Defendant because at the time the domestic violence incident occurred, Agent Petaccio was in the process of turning him into a confidential informant.  When Agent Petaccio pressed Defendant about the drugs and guns found, Defendant eventually incriminated himself and admitted the drugs and guns belonged to him.

**Discussion**

Defendant argues the Court must suppress any statements he made during the second interrogation because Agent Petaccio and Detective Langton failed to remind him that he had waived his *Miranda* rights during the initial interrogation.  And but for this fact, Defendant would not have provided the incriminating statements.  This argument is unpersuasive.

In *Miranda v. Arizona*, 348 U.S. 436 (1966), the Supreme Court "adopted a set of prophylactic measures designed to safeguard the constitutional guarantee against self-incrimination." *J.D.B. v. North Carolina*, 564 U.S. ----, ----, 131 S.Ct. 2394, 2401 (2011) (citation omitted).  These measures require that prior to questioning in a custodial interrogation, "a suspect must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." *Id.* (citation omitted).  Here, no one disputes that Defendant was subject to questioning in a custodial interrogation.  Nor does anyone dispute that Defendant knowingly and voluntarily waived his *Miranda* rights during the initial interrogation.  The only issue then is whether the law enforcement officers were required to remind Defendant that he had waived his *Miranda* rights in the initial interrogation before the second interrogation began.  The Court finds such a reminder was not necessary.

It is well settled that "[p]olice are *not* required to rewarn suspects [of their *Miranda* rights] from time to time." *Berghuis v. Thompkins*, 560 U.S. 370, 386 (2010) (emphasis added).  Rather, when a defendant knowingly and voluntarily waives his *Miranda* rights,

the police may continue to interrogate the defendant even though (1) several hours pass between the waiver and subsequent interrogation, *see Jarrell v. Balkcom*, 735 F.2d 1242 (11th Cir. 1984); (2) different police officers obtain the waiver and conduct the subsequent interrogation, *see United States v. Hopkins*, 433 F.2d 1041 (5th Cir. 1970), *cert. denied*, 401 U.S. 1013 (1971); or (3) he is not informed of the potential subjects of interrogation at the time he waives his rights, *see Colorado v. Spring*, 479 U.S. 564 (1987).

Before the first interrogation began, Detective Langton asked Defendant if he was willing to waive his *Miranda* rights and talk to her.  Defendant responded that he would, prompting Detective Langton to read the entire *Miranda* waiver form to him.  Once Detective Langton finished, Defendant read the form himself and signed it.  The first interrogation began shortly thereafter at 8 p.m. and lasted approximately thirty minutes. At no point during the first interrogation did Defendant attempt to re-invoke his *Miranda* rights.  Six hours later, the FMPD decided to conduct a second interrogation after a significant amount of drugs were found during the execution of a search warrant.

In between the interrogations, Defendant remained at the same location and did not attempt to re-invoke his *Miranda* rights at any point during the delay.  The second interrogation began at approximately 2 a.m. and lasted one hour.[3]   At no point did Defendant express a desire to re-invoke his *Miranda* rights during this interrogation either. In all, Defendant voluntarily and knowingly waived his *Miranda* rights, and there was no

---

[3] While Agent Petaccio conducted the second interrogation instead of Detective Langton, Defendant was well aware that Agent Petaccio was involved in the investigation because she was the officer who initially arrested Defendant.

need for Detective Langton or Agent Petaccio to remind Defendant he had done so before

initiating the second interrogation.[4]

Accordingly, it is now

**ORDERED:**

Defendant Tavares Felton's Motion to Suppress (Doc. #23) is **DENIED**.

**DONE AND ORDERED** at Fort Myers, Florida, this 5th day of November, 2015.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies:  Counsel of Record

---

[4] At the hearing and in his Motion, Defendant argued two Eleventh Circuit cases mandate that the Court suppress the statements made during the second interrogation.  The Court disagrees.  The first case, *Martin v. Wainwright*, 770 F.2d 918 (11th Cir. 1985), involved a seven-day gap between the interrogations, not several hours. The second case, *Ballard v. Johnson*, 821 F.2d 568 (11th Cir. 1987), held a defendant's waiver was valid, even though there was a gap between the interrogations conducted hours apart.  While the Eleventh Circuit noted the defendant was asked if he had waived his rights before the second interrogation began, at no point did the court hold this was a new requirement for earlier *Miranda* waivers to remain valid in subsequent interrogations.